# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SBPAR PARTICIPACÕES S.A., a Brazilian corporation, | ) ) ) |
| Plaintiff, | ) No. _____ ) |
| v. | ) ) |
| HILCO INDUSTRIAL, LLC, a Delaware limited liability company, HILCO SUPERBID LLC, a Delaware limited liability company, HILCO TRADING INC., an Illinois corporation and HILCO TRADING LLC, a Delaware limited liability company | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

Plaintiff, SBPar Participacões, S.A, by and through its undersigned counsel, for its Complaint against Defendants Hilco Industrial, LLC, a Delaware Limited Liability Company, Hilco Superbid LLC, a Delaware limited liability company, Hilco Trading Inc., an Illinois corporation, and Hilco Trading LLC, a Delaware limited liability company, states as follows:

### PARTIES

1.  Plaintiff, SBPar Participacões S.A. ("SBPar"), is a Brazilian corporation with its principal place of business located in Brazil.

2.  Upon information and belief, Defendant, Hilco Industrial LLC ("Hilco Industrial"), is a Delaware limited liability company with its principal place of business at 5 Revere Drive, Suite 206, Northbrook, IL 60062.

3.  Defendant, Hilco Superbid LLC ("Hilco Superbid"), is a Delaware limited liability company with its principal place of business at 5 Revere Drive, Suite 206, Northbrook, IL 60062.

4. Upon information and belief, Defendant, Hilco Trading, Inc., is an Illinois corporation with its principal place of business at 5 Revere Drive, Suite 206, Northbrook, IL 60062.

5. Upon information and belief, Hilco Trading LLC ("Hilco Trading") is a Delaware limited liability company with its principal place of business at 5 Revere Drive, Suite 206, Northbrook, IL 60062.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(2), based on diversity of citizenship, because SBPar is a Brazilian Corporation with its principal place of business in Sao Paulo, Brazil, Hilco Industrial is a Delaware LLC with its principal place of business in Northbrook, Illinois, Hilco Superbid is a Delaware LLC with its principal place of business in Northbrook, Illinois, Hilco Trading, Inc. is an Illinois Corporation LLC with its principal place of business in Northbrook, Illinois, Hilco Trading is a Delaware LLC with its principal place of business in Northbrook, Illinois, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because each Defendant resides in Illinois and a substantial portion of the transactions giving rise to this cause of action occurred within the Northern District of Illinois.

## COMMON ALLEGATIONS

### EARLY HISTORY

8. Hilco Trading is the holding company for several "Hilco" entities that offer a variety of asset acquisition and disposition services, including auctions and principal transactions.

9. SBPar is a holding company of businesses that run industrial auctions.

10. In 2008 Hilco Trading expressed interest in purchasing SBPar, but SBPar declined this offer.

11. In August 2009 Hilco Trading again expressed interest in purchasing SBPar and made another offer to purchase SBPar and SBPar again declined.

12. SBPar was not interested in being purchased by Hilco Trading, so it was mutually decided that the two companies would agree to later form at least two joint ventures.

## The Memorandum of Understanding

13. In order to memorialize their "agreement to agree" on the joint venture(s) to eventually be formed, in or around February 2010 (but backdated to February 25, 2009), a term sheet labeled "Memorandum of Understanding Entered Into By Hilco Trading and Superbid for the Creation of Joint Ventures and Related Marketing Strategy to Own and Promote Proprietary Technology and Methodologies" (the "MoU") was signed by entities related to SBPar, "Superbid," "Pavia," and "S4B," along with Hilco Trading, Inc. and Hilco Industrial. A copy of the MoU is attached as Exhibit A.

14. The MoU laid out an initial concept whereby two joint ventures would be formed. The first, "Industrial Auction JV," would provide software and technical support to benefit Hilco Industrial. It would also seek to refer Superbid's customers to sell surplus industrial goods through Hilco Industrial in the United States. *Id*. §§ 1, 4.

15. The second contemplated joint venture, the "Channel JV," would develop auction technology for other types of auctions. *Id*. § 2.

16. Neither of these joint ventures was ever created.

17. Additionally, the MoU left many key terms open for future negotiation as to how the contemplated ventures would operate, including:

    A. Final capital structure/capital contribution by each member;

    B. The legal form to be utilized;

    C. Development of a business plan specifying goals, revenues, costs and profit targets, along with a detailed plan of execution for each venture;

    D. Contracts to determine the technology platform to be contributed by S4B to the joint ventures and Hilco Industrial;

    E. Determination of the actual direct costs of hosting and maintaining the technology to be contributed;

    F. Marketing strategies;

    G. Personnel to be hired;

18. The MoU is a mere agreement to agree because it lacks many essential terms.

### Formation of the Joint Venture Known as Hilco Superbid

19. In mid-2010, the parties entered into the actual governing document for a joint venture. Hilco Trading and SBPar negotiated and signed the Hilco Superbid LLC Agreement (the "Hilco Superbid LLC Agreement"). The Hilco Superbid LLC Agreement was also backdated to February 25, 2009. The Hilco Superbid LLC Agreement is attached as Exhibit B.

20. Under the Hilco Superbid LLC Agreement, Hilco Trading and SBPar are the sole Members, each owning a 50% interest in Hilco Superbid. Exhibit B at 5.

21. Along with being a member, Hilco Trading is the Manager. As Manager, Hilco Trading "shall have the sole power to do any and all acts necessary or convenient to or for the furtherance of the Business, including all powers, statutory or otherwise, possessed by the Manger under the laws of the State of Delaware." *Id*. at 2 § 5. Moreover, the "Manager may be

4

removed solely by reason of dissolution of the Company or by a unanimous vote of the Members to remove the Manager." *Id.* at 2 § 14.

22. Rather than act as a support company for Hilco Industrial, the Hilco Superbid LLC Agreement expressly states that the "Purpose" of Hilco Superbid is:

> (a) to develop, own and operate a web-based industrial auction platform to sell surplus assets in the United States and elsewhere (excluding Brazil, Argentina, Chile, and Colombia); (b) to market and license the technology used in connection with such platform to other industrial auctioneers and equipment dealers in the United States and elsewhere (excluding Brazil, Argentina, Chile, and Colombia) ....

Exhibit B § 2(a)-(b).

23. Additionally, the agreement further provides for Hilco Superbid to market and license its auction technology to third-parties. *Id.* § 2(b).

### SBPar's Loans To Hilco Superbid

24. In conjunction with the formation of Hilco Superbid, SBPar made several loans to Hilco Superbid (the "Loans"), to be paid within 12 months of the date of transfer of the funds, plus 5% interest, and 0.5% interest per month upon default. The Loans were made on the following dates in the following amounts:

| Date | Amount |
|---|---|
| 09/28/2010 | USD 25,000,00 |
| 03/10/2011 | USD 25,000,00 |
| 05/16/2011 | USD 25,000,00 |
| 06/15/2011 | USD 80,000,00 |
| 08/01/2011 | USD 90,000,00 |
| 10/07/2011 | USD 125,000,00 |

25. The Loans are evidenced by Loan Agreements executed by SBPar and Hilco Superbid. A copy of the Loan Agreements are attached hereto as Group Exhibit C.

26. In accordance with the terms of the Loan Agreements, SBPar disbursed the funds to Hilco Superbid.

5

**The Conduct and Expansion of Hilco Superbid's Business**

27. Pursuant to the Hilco Superbid LLC Agreement, Hilco Superbid has operated its own web-based industrial auctions to sell surplus assets in the United States and elsewhere.

28. This is evidenced by a press release (the "Press Release") dated March 8, 2011, which on information and belief was drafted and released by Hilco Trading or another "Hilco" entity. The Press Release was circulated shortly before Hilco Superbid executed its first online auction. A copy of the Press Release is attached as Exhibit D.

29. The Press Release describes Hilco Superbid as "a joint venture focused on online surplus capital asset redeployment, valuation and disposition programs for large national and multi-national corporations." *Id*.

30. The Press release also states that Hilco Superbid "can assume as much responsibility for the capital asset management deployment, valuation and disposition process as [Hilco Superbid's] client's require from being a fully-outsourced partner provider to managing specific steps as an adjunct to the client's internal staff. That's what makes HilcoBid the best option for companies with a regular flow of surplus assets." *Id*.

31. Over time, Hilco Trading became dissatisfied with the agreement that it knowingly entered into because it determined that Hilco Superbid's business competed with other "Hilco" entities, such as Hilco Industrial.

**The E-Mail**

32. As a result, on July 6, 2012, Mark Smiley, the Chief Financial Officer of Hilco Trading, sent an e-mail (the "E-Mail") to representatives of SBPar presenting Hilco Trading's proposed "Restructure" of Hilco Superbid. Smiley deemed the restructuring to be the "best solution" to "resolve this conflict." A copy of the E-Mail is attached as Exhibit E.

33. The E-Mail details Hilco Trading's plan to eliminate Hilco Superbid's business as set forth in the Hilco Superbid LLC Agreement, and instead diminish it into a lesser role as the "tech service provider (as originally contemplated)" to Hilco Industrial. *Id*. at 4.

34. Hilco Trading's proposed "restructure" of Hilco Superbid is completely one-sided in favor of Hilco Industrial, and to the detriment of Hilco Superbid.

35. For example, paragraph C of the E-Mail of the email states: "Hilco Bid retains asset redeployment tool (ART) and continues to profit from sales of assets resulting from companies using asset redeployment tool (ART Sales). Complete plant shutdowns remain the business of [Hilco Industrial]." *Id*. It is worth pointing out to the Court that ART is a free software product for customers that has never generated any revenue for Hilco Superbid.

36. Likewise, the E-Mail also proposed removing Hilco Superbid's key employees and making them employees of Hilco Industrial. *Id*.

37. Significantly, the proposal in the E-Mail had its origin in documents prepared on or about March 14, 2012. On information and belief these documents were created with the participation of Robert Levy, Partner in Hilco Industrial and distributed to Jeff Hecktman (Chairman and CEO of Hilco Trading), Arnold Dratt (Executive Vice President of Hilco Trading) and Mark Smiley (CFO of Hilco Trading). This evidence demonstrates that Hilco Trading was working behind the scenes in concert with Hilco Industrial to strip Hilco Superbid of its independent value. Such a restructuring, of course, inures to the benefit of Hilco Trading (on information and belief a substantial owner of Hilco Industrial) to the detriment of SBPar. A copy of the March 14, 2012 materials are attached hereto as Exhibit F.

38. By the E-Mail, Hilco Trading, with the aid of Hilco Industrial, is seeking to unilaterally negate the fundamental purpose of the Hilco Superbid LLC Agreement.

39. The only way to amend the Hilco Superbid LLC Agreement is "by a unanimous vote of the Members taken at a meeting of the members or by written consent." Exhibit B ¶ 17.

40. SBPar does not approve of any amendment to the Hilco Superbid LLC Agreement, and Hilco Trading's improper attempt to gut the entity that was agreed upon in the Hilco Superbid LLC Agreement is unacceptable to SBPar as a Member.

41. By its actions, Hilco Trading is not acting in the best interests of Hilco Superbid, of which it is Manager, but rather is acting in the best interests of other "Hilco" entities that Hilco Trading has deemed to be competitive with Hilco Superbid.

42. Because the Members of Hilco Superbid each have a vision for the future of Hilco Superbid that cannot be reconciled, continued operation of Hilco Superbid has become impracticable.

### Hilco Superbid's default on the Loan Agreements

43. Several of the Loans have become due and owing to SBPar by Hilco Superbid.

44. SBPar, however, has not made any payment on the Loans that are due and owing. Consequently, Hilco Superbid is in default.

45. The Manager has also never provided SBPar with complete, detailed and comprehensive financial statements for Hilco Superbid, audited or otherwise, to which SBPar, as a Member, is plainly entitled.

### COUNT I — JUDICIAL DISSOLUTION
### (AGAINST HILCO SUPERBID & HILCO TRADING)

46. For this paragraph, Plaintiff hereby restates and realleges the foregoing paragraphs as though fully stated herein.

47. Hilco Superbid has only two members: Hilco Trading and SBPar.

48. The LLC Agreement states that one purpose of Hilco Superbid was to "develop, own and operate a web-based industrial auction platform to sell surplus industrial assets in the United States and elsewhere (excluding Brazil, Argentina, Chile, and Colombia."

49. The Manager seeks to eliminate Hilco Superbid's independent value as a business, and turn it into a "tech services provider" for other Hilco entities.

50. SBPar finds this proposal unacceptable, and contrary to the plain and unambiguous terms of the Hilco Superbid LLC Agreement.

51. Now, the sole two Members of Hilco Superbid are at permanent odds over the conduct, expansion, and overall future of the joint venture, and therefore it is not reasonably practicable to carry on the business in conformity with the Hilco Superbid LLC Agreement.

WHEREFORE, Plaintiff, SBPar Participacões, S.A. prays this Court for:

A. Entry of an order or decree finding that it is not reasonably practicable for Hilco Superbid LLC to carry on business in conformity with the Hilco Superbid LLC Agreement and Memorandum of Understanding, pursuant to §18-802 of the Delaware Limited Liability Company Act;

B. Entry of an order directing the Hilco Superbid Members and Managers to wind up the business of Hilco Superbid LLC accordance with the terms of the Delaware Limited Liability Act;

C. Entry of an order appointing a receiver to take control of the business of Hilco Superbid and the winding up of its affairs; and

D. Such other and different relief as may be appropriate.

## COUNT II — ACCOUNTING
### (AGAINST HILCO SUPERBID & HILCO TRADING)

52. For this paragraph, Plaintiff hereby restates and realleges the foregoing paragraphs as though fully stated herein.

53. SBPar is entitled to certain amounts upon dissolution of Hilco Superbid but believes those amounts are difficult if not impossible to ascertain at this time except to the extent that the amount is in excess of $75,000.

54. The Hilco Superbid LLC Agreement states that all of Hilco Superbid's profits and losses are to be allocated equally to each Member, including those profits resulting from operations currently ongoing, which revenues are still to be collected.

55. SBPar is entitled to an adjustment of the accounts between the Members and a rendering of a judgment for the amount ascertained.

WHEREFORE, Plaintiff, SBPar Participacões, S.A. prays this Court for:

A. A full accounting of Hilco Superbid;

B. Entry of an order appointing a receiver to take control of the business of Hilco Superbid, to oversee the accounting, and to manage the revenues still to be collected to ensure proper distribution; and

C. For such other and further relief in its favor as the Court deems appropriate.

### COUNT III — DECLARATORY JUDGMENT
### (AGAINST HILCO TRADING, INC. AND HILCO INDUSTRIAL)

56. For this paragraph, Plaintiff hereby restates and realleges the foregoing paragraphs as though fully stated herein.

57. Pursuant to 28 U.S.C § 2201(a), this Court, in the case of an actual controversy, is vested with the power to declare the rights of the parties, having the force of a final judgment, of the construction of a written instrument, and to give such other and further relief as may be necessary.

58. An actual controversy exists as to the enforceability of the MoU executed by Hilco Trading, Inc., Hilco Industrial, Superbid, Pavia, and S4B.

59. As set forth above, the MoU is not enforceable as a contract, the parties are not bound by any of its terms, and its provisions are of no force and effect.

WHEREFORE, SBPar Participacoes, SA requests that this Court enter a declaratory judgment that:

    A. The MoU is not an enforceable contract;

    B. The parties are not bound by any of the terms of the Memorandum of Understanding;

    C. The terms of the Memorandum of Understanding are of no force or effect;

    D. Grants all other relief that this Court deems just and appropriate.

## COUNT IV — BREACH OF CONTRACT
## (AGAINST HILCO SUPERBID)

60. For this paragraph, Plaintiff hereby restates and realleges the foregoing paragraphs as though fully stated herein.

61. The Loan Agreements are valid and enforceable contracts supported by consideration.

62. SBPar has performed all of its duties under the Loan Agreements. Nevertheless, Hilco Superbid has failed to repay the amounts due and owing to SBPar under the Loan Agreements.

63. As a result, Hilco Superbid has directly and proximately caused injury to SBPar by depriving it of the amounts due and owing under the Loan Agreements.

WHEREFORE, Plaintiff, SBPar Participacões, S.A. prays this Court for:

    A. Entry of judgment in its favor and against Hilco Superbid for all amounts due and owing under the Loan Agreements, in an amount in excess of $75,000.00; and

11

      B.      For such other and further relief in its favor as the Court deems appropriate.

> SBPAR PARTICIPACÕES S.A. and S4B DIGITAL DESENVOLVIMENTO DE TECNOLOGIA MULTIMÍDÍA LTDA
>
> By:    */s/ Pia N. Thompson*   
> One of its Attorneys

Pia N. Thompson (ARDC # 6225746)
Jordan M. Hanson (ARDC # 6306106)
GOULD & RATNER LLP
222 North LaSalle Street, Suite 800
Chicago, IL 60601
telephone: 312.899.1630
fax: 312.236.3241
pthompson@gouldratner.com
jhanson@gouldratner.com

4839-2382-2096, v. 3